GUIDRY, Justice.
|,In this matter, the intervening plaintiffs, Silton and Robin Fuselier, seek to relate the date of the filing of their petition back to the date of the timely filing of the original petition against the defendant, Meyer, Meyer, LaCroix & Hixson, Inc. We granted the defendants writ application to resolve a split in the circuits as to whether La.Code Civ. Proc. art. 1153, the so-called relation back doctrine, controls the Fuseli-ers intervening action or whether La.Code Civ. Proc. art. 1067, providing the time limitation exception for incidental demands, governs. For the reasons set forth herein, we find the petition of the intervening plaintiffs was not timely filed under La.Code Civ. Proc. art. 1067, reverse the judgment of the court of appeal, and reinstate the ruling of the trial court sustaining the defendants exception of prescription.
FACTS and PROCEDURAL HISTORY
The relevant facts in this case are not in dispute. The case involves claims brought by a number of residents of the City of Oberlin for property damage and personal injury caused by sewerage overflow;. On October 20, 2003, Robin and Corliss Sten-son filed their original petition (hereinafter, “the Stenson petition”) for damages against the City of Oberlin. On June 1, 2004, several other plaintiffs also filed original petitions for damages. In their petitions, these plaintiffs made allegations of sewerage overflow similar to those contained in the Stenson petition. |2A11 of these petitions were consolidated on September 22, 2004.
On that same date, these consolidated plaintiffs (hereinafter, the Stenson plain *1207 tiffs) filed their First Supplemental and Amending Petition for Damages, in which they added Meyer, Meyer, LaCroix & Hix-son, Inc. (hereinafter, MMLH) as a defendant. On March 11, 2005, the Stenson plaintiffs filed their Second Supplemental Petition for recognition of class status. On March 17, 2005, the last defendant, MMLH, was served with the Second Supplemental Petition.
On July 20, 2006, Silton and Robin Fuse-lier, the plaintiffs herein, filed the instant Petition of Intervention. In the petition, the Fuseliers asserted allegations similar to those found in the consolidated petitions of the Stenson plaintiffs. Specifically, the Fuseliers claimed the problems with sewerage and water overflow commenced sometime in the summer and fall of 2003. They contended the City of Oberlin purposefully and knowingly misled and misinformed plaintiffs of the cause for the waste water and raw sewerage in their home.... Additionally, the Fuseliers claimed they continue to experience issues with the backup of waste water and raw sewerage into their home. Finally, they alleged the City of Oberlin contracted with MMLH to design a waste water sewerage treatment plant for the City of Oberlin.
MMLH filed a peremptory exception of prescription in response to the Fuseliers’ petition of intervention. In the exception, MMLH maintained the Fuseliers petition of intervention is an “incidental demand” under La.Code Civ. Proc. art. 1031 and that it was untimely filed pursuant to La. Code Civ. Proc. art. 1067.[1] MMLH argued the Fuseliers’ July 20, 2006 petition was untimely because it Rwas barred by prescription when the main demand, or Second Supplemental Petition of the Sten-son plaintiffs, was filed on March 11, 2005, and, furthermore, was not filed within ninety days of service of the supplemental petition upon MMLH on March 17, 2005. The Fuseliers argued in opposition that the intervention could relate back to the original petition filed by the Stensons under La.Code Civ. Proc. art. 1153[2] and the factors set forth in Giroir v. South Louisiana Medical Center Div. of Hospitals, 475 So.2d 1040 (La.1985).[3]
*1208 After conducting two hearings and inviting post-hearing memoranda, the trial court maintained the defendants exception of prescription and executed a final judgment dismissing with prejudice the Fuseli-ers claims against MMLH, but reserving their claims against any other defendant.[4]
|4The court of appeal reversed the trial courts ruling maintaining the defendants exception of prescription. Stenson v. City of Oberlin, 09-1125 (La.App. 3 Cir. 3/10/10), 32 So.3d 1159. The appellate court looked to whether the Fuseliers claims related back to the original petition brought by the earlier plaintiffs, observing that La.Code Civ. Proc. art. 1153 governed the relation back of a related pleading to an original pleading. The court rejected the defendants reliance on La.Code Civ. Proc. art. 1067, reasoning that Article 1067 contemplates an action that ordinarily may have been subject to prescription and would not otherwise be subject to revival and concluding instead that La.Code Civ. Proc. art. 1153 governs in this case. Id., p. 4 n. 1, 32 So.3d at 1163 n. 1. The appellate court then applied the factors set forth in Giroir to find the Fuseliers petition of intervention asserting virtually identical tort claims against MMLH and the City of Oberlin related back to the date of the original filing by the Stenson plaintiffs. The court of appeal concluded the filing of the original petition by the Stenson plaintiffs had interrupted prescription for the benefit of the Fuseliers intervening suit. Id., p. 6, 32 So.3d at 1163.
DISCUSSION
As outlined below, there has been confusion in the jurisprudence in determining whether La.Code Civ. Proc. art. 1153 or La.Code Civ. Proc. art. 1067 applies to a petition filed by an intervening plaintiff; consequently, we granted the writ application to resolve the apparent split in the circuit courts. Stenson v. City of Oberlin, 10-0826 (La.6/25/10), 38 So.3d 359. After our review of the applicable code articles and jurisprudence, we find the court of appeal erred in applying LajCode- Civ. Proc. art. 1153 to the Fuseliers intervening petition rather than La.Code Civ. Proc. art. 1067.
The defendant asserts the court of appeal erred in finding the Fuseliers petition of intervention is not barred by prescription by application of La.Code Civ. Proc. art. 1153 and the factors set forth in Gir-oir. Instead, the defendant argues, this court should give effect to the clear language of La.Code Civ. Proc. arts. 1067 and 1153, and conclude the Fuseliers intervening petition is governed by La.Code Civ. Proc. art. 1067.[5] Applying Article 1067, the defendant maintains, the Fuseliers intervening petition is untimely because it *1209 was filed on July 20, 2006, more than ninety days after service of process was made on MMLH on March 17, 2005.
The Fuseliers make no mention in their brief of Article 1067. Instead, they argue their claims have not prescribed under a theory of contra non valentem. Alternatively, they argue their petition satisfies all of the Giroir factors.
The Jurisprudence
We commence our analysis with a survey of the conflicting decisions applying these articles to intervening petitions. In deciding to apply Article 1153 and the doctrine of relation back, the Third Circuit below relied on Calbert v. Batiste, 09-514 (La.App. 3 Cir. 11/4/09), 23 So.3d 1031. In Calbert, the decedents son from a previous marriage sought to intervene in the wrongful death suit filed by the decedents widow and her son. The Calbert court applied Giroir to find the intervening petition related back to the date of the original filing by the widow. The court held that [the Giroir ] test was originally used to determine whether an amended petition adding or substituting a plaintiff should be allowed to prelate back to the date of the filing of the original petition, but multiple courts have used the same test in considering prescribed intervening suits. 23 So.3d at 1035 (citing Harvill v. Arnold, 34,409 (La.App. 2 Cir. 1/26/01), 777 So.2d 1271; Riddle v. Simmons, 626 So.2d 811 (La.App. 2d Cir.1993), unit denied, 93-2920 (La.4/29/94), 637 So.2d 459).
In Riddle, the Second Circuit found that the timely filing of the main demand interrupted prescription with respect to the challenged intervention. 626 So.2d at 814. The Riddle court noted prescriptive statutes are strictly construed in favor of maintaining rather than barring actions. Id. (citing Taylor v. Liberty Mutual Ins. Co., 579 So.2d 443 (La.1991); Montminy v. Jobe, 600 So.2d 121 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992)). The Riddle court further noted that consistent with that precept, recent decisions have tended to allow interventions, or claims by or against additional parties, to relate back to the filing of the original demand, so that, in effect, prescription is interrupted. Id. (citing Findley v. City of Baton Rouge, 570 So.2d 1168 (La.1990); Giroir v. South La. Med. Center, 475 So.2d 1040 (La.1985); Allstate Ins. Co. v. Theriot, 376 So.2d 950 (La.1979); Montminy, supra; Smith v. Williams, 535 So.2d 959 (La.App. 2d Cir.1988)). The Riddle court found no merit to having different tests for interventions or amendments and reasoned as follows:
In such cases, no essential protective purpose of the prescriptive statute is violated by permitting post-prescription amendments or interventions that are based on the same factual situations pleaded in the original petition. The prescriptive limitation does not bar these subsequent claims because the defendant, through earlier legal demand on behalf of indicated interests, has received adequate and timely notice that his liability arising out of the factual occurrence is sought to be enforced. The fundamental purpose of prescription is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect against stale claims and the non-preservation of relevant proof. Giroir, supra; Allstate, supra. Notice to a defendant of legal proceedings on a claim interrupts prescription. Montiville v. City of Westwego, 592 So.2d 390 (La.1992); Allstate, supra.
|7626 So.2d at 814.
The Riddle line of reasoning was apparently based in part on the Second Circuit’s appreciation of this courts opinions in Giroir and Allstate v. Theriot. In Allstate v. Theriot, Allstate, a workers’ compensation *1210 carrier, timely sued Theriot in tort for additional expenses Allstate had paid to Moore, the actual injured employee. Allstate’s suit was ultimately found to have failed to state a cause of action against the tortfeasor, Theriot. Moore, however, had intervened in the suit after the prescriptive period had run, based on the same accident, the same negligence by the same party, and the same injury. This court found that Allstates timely suit against Theriot, even though it was later dismissed for failing to state a cause of action, had fully apprised Theriot that judicial claim was being made on him for his liability in causing Moore’s injuries and that Moore himself might intervene in the suit. 376 So.2d at 953-54. Therefore, the court concluded, Allstate’s timely suit had interrupted prescription against Theriot in favor of Moore and Moore, though a different person from the original plaintiff, was “closely connected in relationship and identity of interest with the original plaintiff.” 376 So.2d at 954. Although the Allstate v. Theriot court did not mention either Article 1067 or Article 1153, the court reasoned as follows:
The underlying reason why prescription does not bar the subsequent claim in these instances is that the defendant has adequate and -timely notice by legal demand on behalf of indicated interests that liability arising out of the factual occurrence pleaded is sought to be enforced against him. The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from the loss or non-preservation of relevant proof. [Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973) ]; James and Hazard, Civil Procedure, Section 5.7 (2d ed.1977); Comment, Developments in the Law: Statutes of Limitation, 63 Harv.L.Rev. 1177, 1185 (1950). None of these basic prescriptive values are offended when a subsequent claimant, closely connected in relationship and interest to the original plaintiff, enters the timely-filed suit to assert a claim based upon the same factual occurrence as that initially pleaded.
| «376 So.2d at 954.
In Giroir, this court applied Article 1153 and allowed an amending petition in a survival action to relate back to the date of a timely filed original petition, when the amending petition added major children as plaintiffs and changed the husbands capacity from administrator of the estate to an individual. As previously noted, the Gir-oir court specified four criteria that must be satisfied in order for an amending petition to relate back to the date of the filing of the original petition. See Note 3, supra.
The Second Circuit in Riddle also relied on several other cases to find the original demand had interrupted prescription for purposes of the subsequent petition of intervention. The court reasoned as follows:
[Njeither the Louisiana Supreme Court nor this court has directly addressed whether the indicated four-part test [of Giroir ] applies to interventions, such as before us. A memorandum decision, Taylor v. Charity Hospital of Louisiana in New Orleans, 476 So.2d 338 (La.1985), merely remanded a matter to the fourth circuit-for consideration of whether an intervention adding a plaintiff related back in light of Giroir, which had been rendered a month earlier. However, the recipient court subsequently never reached the issue, and, instead, dismissed the appeal as untimely. See Taylor v. Charity Hospital of Louisiana in New Orleans, 481 So.2d 1043 (La.App. 4th Cir.1985). The only case directly confronting the question, Duffie v. So. Pacific Transp. Co., 563 So.2d 933 (La.App. 1st Cir.1990), held first that the four-step Giroir inquiry *1211 did not apply to an intervention, and then distinguished Allstate on seemingly factual grounds.
At any rate, we fail to appreciate the advantages from continued viability of two different tests. Pursuant to LSA-C.C.P. Art. 1091, a third party may intervene to enforce a right related to, or connected with, the object of the pending action against one or more parties thereto, by joining with the plaintiff in demanding the same or similar relief against the defendant. As indicated by the Comments accompanying that article and the jurisprudence, and contrary to the federal rules, interventions should be liberally allowed. See Banks v. Rattler, 426 So.2d 362 (La.App. 2d Cir.1983); Amoco Prod. Co. v. Columbia Gas Trans. Corp., 455 So.2d 1260 (La.App. 4th Cir.1984), writ denied, 459 So.2d 542, 543 (La.1984). Further, an intervention by a plaintiff under the Louisiana Code of Civil Procedure is quite comparable to adding a party plaintiff by amended petition.
Accordingly, the persistent utilization of different tests in these |ntwo similar situations can well produce conflicting, and thus undesirable, results. Moreover, we may draw from the actions of the supreme court that in both instances the same general principles should govern. See Taylor v. Charity Hospital, supra (remanding an intervention petition for consideration in light of Giroir); Findley, supra (using the “closeness of relationship” and “identity of interests” language from Allstate to explain parts of the Giroir inquiry). Thus, although Giroir is based on LSA-C.C.P. Art. 1153 and concerns amended petitions, we apply its four-step test in determining whether Riddle’s original petition interrupted prescription to the benefit of the present intervention.
Riddle, 626 So.2d at 814-15 (footnotes omitted).
As the Riddle court acknowledged, other circuits have ruled that the prescriptive period for intervening actions is controlled by Article 1067. See Duffie v. So. Pacific Transp. Co., 563 So.2d 933, 935 (La.App. 1st Cir.1990); Moisant v. Dominick, 609 So.2d 261, 263 (La.App. 5th Cir.1992). In Duffie, the mother of the deceased minor child, killed in an automobile/train collision, timely filed her survival and wrongful death actions against the defendants. More than twenty-three months following the accident, the father of the deceased child filed a petition of intervention seeking to join his wrongful death claim and survival action with the mothers original petition. The First Circuit in Duffie declined to apply the Giroir factors to the fathers intervening petition, noting the mother did not ask to amend her claim to add her ex-husband and have it relate back to her timely filed petition. 563 So.2d at 935. Had she done so, the court observed, then Giroir might be applicable. The Duf-fie court did not believe the notice requirement in Giroir would have been satisfied, at any rate, reasoning that the defendant was not required to attempt to track down ex-spouses. The Duffie court distinguished Allstate v. Theriot on the basis that the defendant there had received actual notice of the possibility the injured employee might intervene in the workers compensation carriers suit against the defendant motorist. Id. at 936.
The Fifth Circuit in Moisant addressed whether Article 1067 governed an | mincidental demand asserted in a cross-claim. There, the original suit was filed by the plaintiff, a guest passenger in Mois-ant’s ear, against various defendants, including Moisant. Moisant filed a cross-claim within 90 days of the main claim against the other defendants, who excepted on prescription grounds arguing the prescription issue was governed by Giroir. The Fifth Circuit in Moisant declined to *1212 apply Giroir and two earlier decisions from that circuit because those cases had involved amended petitions. 609 So.2d at 263. The appellate court reasoned that Moisant’s cross-claim was a permitted incidental demand and was thus governed by Article 1067. Id. According to the appellate court, Article 1067 allows the filing of an incidental demand after the prescriptive period if that demand was not barred at the time the main demand was filed; whereas, article 1153 relates to the amendment of pleadings in the main demand. Id. The Fifth Circuit in Moisant ultimately found the incidental demand was timely filed.
The Fourth Circuit in Traylor v. Reliance Ins. Co., 98-1379 (La.App. 4 Cir. 7/1/98), 715 So.2d 1253, writ denied, 98-2048 (La.11/6/98), 728 So.2d 392, has also held that Article 1153 applies only to amending petitions. There, the mother of the injured plaintiffs illegitimate daughter sought to intervene in the tort suit filed two years earlier by the plaintiff, his wife, and their son. The appellate court found the petition of intervention was an incidental demand to the original suit and, furthermore, it was barred by prescription because it was not timely filed pursuant to Article 1067, which applies to incidental demands. The Traylor court further found the intervening suit could not be considered an amendment to the principal demand; therefore, it - declined to apply Article 1153 and Giroir. Though it discussed Giroir at length and observed the defendants could not reasonably foresee the possibility of an illegitimate child being added to' the original suit, the Traylor court found Giroir is “limited to ... an amended petition adding an additional party InPlaintiff after the expiration of the prescriptive period.... ” 715 So.2d at 1255. In finding the intervening petition in Tray-lor was not an amendment in substance to the principal demand, the appellate court reasoned: An amendment to a pleading cannot be made unilaterally without the participation of the party or parties to the pleading sought to be amended. The original plaintiffs did not participate in the intervention. Id. at 1256-57.
However, subsequent to its decision in Traylor, a different panel of the Fourth Circuit did apply the Giroir factors to a petition of intervention when it concluded the intervening petition related back to the filing of the original petition. In re: Matranga, 06-0604, 06-0605 (La.App. 4 Cir. 12/20/06), 948 So.2d 261. There, the mother of the deceased child sought to intervene as a co-plaintiff in the fathers medical malpractice action against the health care providers. The intervenor relied on this courts decisions in Allstate v. Theriot and Giroir. The appellate court found that all four of the Giroir factors were satisfied, and distinguished the earlier decision in Traylor as unique to its own set of facts in that the intervenor, who was an alleged illegitimate child, could not have reasonably been foreseen as a party plaintiff in the suit. 948 So.2d at 268. The court held as follows: [P]ost-prescription amendments and interventions in which a person seeks to join or substitute parties will relate back to the original petition, if: (1) the new person has an interest in the original claim pursuant to La. C.C.P. art. 1091;[6] (2) the new person states a cause of action arising out of the same conduct, transaction, or occurrence complained of in the original claim; and (3) the four criteria set *1213 forth in Giroir have been satisfied. 948 So.2d at 269. The appellate court found the 1 ^intervening petition was not prescribed and reversed the trial courts ruling maintaining the defendants exception of prescription.
Since our decisions in Giroir and Allstate v. Theriot, more recent decisions also suggest Article 1067 controls intervening petitions, rather than the relation back doctrine of Article 1153 and Giroir. See Moore v. Gencorp, Inc., 633 So.2d 1268 (La.1994); Reggio v. E.T.I., 07-1433 (La.12/12/08), 15 So.3d 951.[7] In Moore, this court considered whether an intervention, which was not barred by prescription at the time the principal action was filed, was timely if filed within ninety days of service of an amended principal demand. In Moore, the mother of decedents three illegitimate children timely filed wrongful death and survival actions in 1987 against the defendant manufacturer of the allegedly defective tire. 633 So.2d at 1269. Over two years later, the plaintiff amended her petition to add the manufacturers insurer. One day later, the decedents wife and other children filed a petition of intervention asserting wrongful death and survival actions. The trial court sustained the defendants exception of prescription. On appeal, the defendants argued Article 1067 was designed only to allow a litigant, who is brought into a lawsuit at the end or very near the end of the prescriptive period, an additional ninety days from service of the main demand to assert an incidental claim. 633 So.2d at 1270. The court of appeal held that Article 1067 did not apply to the intervening wife and affirmed the trial court. This court granted certiorari and reversed.
- This court in Moore first determined the plaintiffs amended principal demand related back to the date of the filing of her original petition pursuant to Article 1153. This court then examined the wife’s petition of intervention in the context of Article 1067, stating:
| isThe language and history of Article 1067 clearly express the legislative aim to include intervention within the meaning of incidental demand as used in that article.
First, always, is the question whether the legislature has directly spoken to the precise question at issue. If the intent of the legislature is clear, that is the end of the matter; for the courts must give effect to the unambiguously expressed intent of the legislature if its application does not lead to absurd consequences. We think intervention is clearly within the intended scope of Article 1067....
Second, the history of Article 1067 indicates the clear legislative intent to include intervention under its aegis as a class of prescribed demand to be granted limited protection from the bar of prescription.
Moore, 633 So.2d at 1270-71 (citations omitted). This court reversed, finding Article 1067 does apply to the wife’s petition of intervention. Because this court found that Article 1067 permitted the filing of the wife’s intervening petition, it expressly declined to address whether the intervening petition could relate back to the filing of the principal demand under Article 1153 and Giroir. 633 So.2d at 1271.
The Code of Civil Procedure Articles
With this jurisprudential backdrop, we turn to the language of the civil *1214 procedure articles themselves. “When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. The starting point for interpretation of any statute is the language of the statute itself.” Cat’s Meow v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198 (citations omitted). Given the plain language of the articles, we find the cases deciding to apply Article 1067, rather than Article 1153 and/or the Giroir factors, to incidental demands such as a petition to intervene in the main demand have adopted the correct approach.
Article 1067, entitled When prescribed incidental or third party demand is not barred, provides:
|MAn incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third-party defendant within ninety days from service of process of the third-party demand.
Article 1031, Incidental demands allowed, reads:
A. A demand incidental to the principal demand may be instituted against an adverse party, a co-party, or against a third person.
B. Incidental demands are reconvention, cross-claims, intervention, and the demand against third parties.
Article 1153, Amendment relates back, states:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
Article 1067 clearly provides an exception to prescription or preemption for incidental demands. An intervention is an incidental demand, see La.Code Civ. Proc. art. 1031, and thus Article 1067 is the applicable statute governing the exception to prescription or preemption for an intervention. See Moore v. Gencorp, Inc., 633 So.2d at 1269, 1270. Article 1153, by contrast, provides a means for determining when an amendment adding a plaintiff, claim, or defendant relates back to the date of an earlier filed pleading for prescriptive purposes. See Id. at 1270. As the Dujfie and Traylor courts reasoned, Article 1153 allows a plaintiff to amend his petition to add a plaintiff, claim, or defendant, but no code article allows a party or potential party to amend another party’s pleading to do so. In sum, we find that applying Article 1153 and the factors enunciated in Giroir to petitions seeking to intervene in the main demand would expand Article 1153 beyond the scope intended by the legislature. Accordingly, we find the court of appeal below erred in applying Article 1153 and the Giroir factors to the instant petition of the Fuseliers seeking to intervene in the Stenson plaintiffs petition, rather than Article 1067 governing incidental demands such as interventions.
| ir,Applying Article 1067, we find the Fuseliers petition of intervention has prescribed. Even if we assume their petition was not barred by prescription at the time the Stensons filed the original petition, the intervening petition was not filed within 90 days of service on the last defendant, MMLH. Accordingly, the trial court did not err in sustaining the defendants exception of prescription.
CONCLUSION
For the reasons set forth above, we find the court of appeal erred in not applying *1215 La.Code Civ. Proc. art. 1067 to determine whether the plaintiffs’ petition of intervention was barred by prescription. Applying that article to the facts of this case, we find the action of the intervening plaintiffs was not timely filed within 90 days of the date of service on the last added defendant. Accordingly, we reverse the judgment of the court of appeal and reinstate the ruling of the trial court sustaining the defendants peremptory exception of prescription. Furthermore, we remand the case to the trial court, which is directed to allow the plaintiffs the opportunity to amend their petition to remove the grounds of the defendant’s peremptory exception of prescription. See La.Code Civ. Proc. art. 934.
REVERSED; DISTRICT COURT JUDGMENT REINSTATED; REMANDED.

. La.Code Civ. Proc. art. 1031, Incidental demands allowed, provides:
A. A demand incidental to the principal demand may be instituted against an adverse party, a co-party, or against a third person.
B. Incidental demands are reconvention, cross-claims, intervention, and the demand against third parties.
La.Code Civ. Proc. art. 1067, entitled When prescribed incidental or third party demand is not barred, provides:
An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third-party defendant within ninety days from service of process of the third-party demand.

. La.Code Civ. Proc. art. 1153 states:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.

.In Giroir, this court set forth the factors to consider in applying La.Code Civ. Proc. art. 1153 to the addition or substitution of a plaintiff or claim:
[A]n amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
Giroir, 475 So.2d at 1044 (citations omitted).

. At the second hearing, the Fuseliers counsel attempted to present the testimony of Robin Fuselier regarding the date the Fuseliers allegedly first became aware of the water and sewerage problem in their home. MMLHs counsel objected and argued the ruling on MMLHs exception of prescription should be made from the face of the pleadings. The Fuseliers counsel apparently agreed. Counsel failed to proffer Mrs. Fuseliers testimony at the hearing. The Fuseliers on appeal assigned as error the trial courts ruling. Because counsel had relied on the face of the pleadings, the appellate court reasoned, the trial court did not abuse its discretion in failing to permit the testimony of Robin Fuse-lier at the hearing. We make no comment on the merits of the trial courts ruling or the court of appeals reasoning.

. The defendant further argues the Fuseliers intervening petition does not satisfy the Giroir criteria for relation back to the petition of the original Stenson plaintiffs. Particularly, the defendant asserts the Stenson plaintiffs petition did not provide reasonable notice to the defendant of the Fuseliers existence, involvement and potential claims, and the Fuseliers lack the familial or legal relationship with the original plaintiffs as contemplated by Giroir.

. La. Code Civ. Proc. art 1091, entitled Third Person May Intervene, provides that [a] third person having an interest therein may intervene in a pending action to enforce a right reláted to or connected with the object of the pending action against one or more of the parties thereto by (1) [¡Joining with plaintiff in demanding the same or similar relief against the defendant.

. In Reggio, this court examined the timeliness of a third-party demand. The court discussed the issue of whether the third party demand was prescribed in the context of Moore and Article 1067 without mention of either Giroir or Article 1153. 15 So.3d at 955-56.